1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GERALD JACKSON, ROSLYN                    )
JACKSON and DEAN MELLOM,                  )
Individually and on behalf of all others  )
Similarly situated,                       )
                                          )        CASE NO. 2:19-cv-01281-BJR
                    *Plaintiffs,*         )
            v.                            )        ORDER DENYING DEFENDANTS'
                                          )        MOTIONS TO DISMISS
THE ALIERA COMPANIES, INC., a             )
Delaware corporation; ALIERA             )
HEALTHCARE, INC., a Delaware             )
Corporation; TRINITY HEALTHSHARE,        )
INC., a Delaware corporation,            )
                                          )
                    *Defendants,*         )
_____ )

## I.        INTRODUCTION

Plaintiffs Gerald Jackson, Roslyn Jackson, and Dean Mellom ("Plaintiffs") brought this

putative class action suit against Defendants Aliera Companies, Inc., including its now-defunct

subsidiary Aliera Healthcare, Inc. (collectively "Aliera"), and Trinity HealthShare, Inc. ("Trinity")

on August 14, 2019.  *See* First Am. Compl. ("FAC"), Dkt. No. 16.  Plaintiffs, who are enrolled in

Trinity's healthcare cost sharing plan ("AlieraCare"), allege that Defendants: (1) sold them

unauthorized health insurance plans in violation of Washington law; and (2) engaged in unfair and

deceptive practices in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et

seq.*  FAC at ¶¶ 17–19; 103; 105.

This matter comes before the Court on two motions to dismiss for failure to state a claim, filed respectively by Defendants Trinity and Aliera.  *See* Defs.' Mots. to Dismiss (collectively "Defs.' MTD"), Dkt. Nos. 21; 23.  Defendants seek dismissal of this case in its entirety on the grounds that Trinity is not an insurance company and, instead, qualifies as a Health Care Sharing Ministry ("HCSM") under the federal Patient Protection and Affordable Care Act ("ACA"), and is therefore exempt from federal and state health insurance law.  *Id.*  In the alternative, Defendants argue that Plaintiffs prematurely filed this suit because they have failed to exhaust the dispute resolution procedures outlined in their AlieraCare contracts with Trinity.  *Id.*  Plaintiffs oppose Defendants' motions to dismiss, contending that Trinity is a health insurance company under the ACA and Washington law; and that Plaintiffs are not required to exhaust the dispute resolution procedures in their contracts with Trinity because those requirements are in violation of Washington law.  *See* Pls.' Consolidated Resp. to Defs.' MTD ("Pls.' Resp."), Dkt. No. 27.  Having reviewed the motion, the opposition thereto, the record of the case, and the relevant legal authority, the Court denies Defendants' motions.

## II.    BACKGROUND

A. <u>Statutory Background of HCSMs under the ACA</u>

Plaintiffs claim that Defendants sold Plaintiffs health insurance plans in violation of both federal and state health insurance laws.  Defendants' motions rely on their position that Defendant Trinity is an HCSM, not an insurance company, and therefore is exempt from complying with federal and state insurance laws.  Because this case turns on whether Trinity is a legitimate HCSM, a brief overview of the legal status of HCSMs is warranted.

In 2010, Congress passed the ACA, which required all individuals to have health insurance coverage or pay a penalty for failing to comply with this requirement.  *See* 26 U.S.C. §

5000A(b)(1).   Congress carved out limited exceptions to the ACA's individual mandate requirement, one of which was reserved for members of existing HCSMs.   26 U.S.C. § 5000A(d)(2)(B).

To qualify as an "HCSM" under the ACA, an organization must be one:

(I) which is described in section 501(c)(3) and is exempt from taxation under section 501(a),
(II) members of which share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs and without regard to the State in which a member resides or is employed,
(III) members of which retain membership even after they develop a medical condition,
(IV) which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999, and
(V) which conducts an annual audit which is performed by an independent certified public accounting firm in accordance with generally accepted accounting principles and which is made available to the public upon request. *Id.*

If an entity meets the federal requirements of an HCSM, it then qualifies as an HCSM under Washington law, and is exempt from obtaining a certificate of authority from the Washington Insurance Commissioner.  *See* RCW 48.43.009 ("Health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined in RCW 48.01.050.  For purposes of this section, 'health care sharing ministry' has the same meaning as in 26 U.S.C. Sec. 5000A.").

B. Factual Background

1. *Defendants Aliera and Trinity*

The facts alleged by Plaintiffs are taken as true for the purposes of this order.  *See Ashcroft v. Iqbal*, 556 U.S. 556 U.S. 662, 678 (2009).  Aliera is a Delaware corporation headquartered in Atlanta, Georgia.  FAC at ¶ 11.  It was founded by Timothy Moses, his wife Shelley Steele, and son Chase Moses sometime after 2011.  *Id.*  After its incorporation, Mr. Moses convinced

3

Anabaptist HealthShare ("Anabaptist"), a small HCSM, to allow Aliera to market and sell Anabaptist's healthcare plans. *Id*. at ¶ 12. After this relationship ended in 2018, Timothy Moses sought to create a partnership like the one Aliera had with Anabaptist since Aliera no longer had access to an already-existing HCSM to sell its products. *Id*. at ¶ 14. On June 27, 2018, Aliera founded Trinity, a 501(c)(3) tax-exempt organization that facilitates the sharing of medical costs amongst its members. *Id*. At the time of its creation, Trinity had no predecessor entities and no members; its chief executive officer was a former Aliera employee with ties to the Moses family. *Id*. Trinity and Aliera then entered into a contract, which authorized Aliera to use Trinity's non-profit status to sell, market, and administer Trinity's healthcare plans, purported as HCSM plans, giving Aliera complete control over its proceeds and its administration of AlieraCare. *Id*. Aliera's intent was to create a relationship with Trinity that was facially similar to the one it had with Anabaptist.

Aliera marketed, sold, and administered Trinity's AlieraCare plans, which provided members benefits for medical coverage in exchange for their monthly premiums. FAC at ¶ 15. Once a member meets an initial payment contribution towards his or her medical costs, much like a standard deductible, Trinity pledges to pay the member's remaining medical expenses in accordance with his or her selected AlieraCare plan. *Id.* at ¶ 31. Trinity includes these coverage details, the obligations of each party, and a set of dispute resolution procedures in its AlieraCare benefits booklet ("Member Guide"), which the parties agree is a contract. *Id.*; *see* Member Guide, Ex. B to FAC, Dkt. No. 16-2. Trinity provides this booklet to its members upon their enrollment.

### 2. *Plaintiffs Mellom and the Jacksons*

Plaintiffs, representatives of the putative class action, enrolled in AlieraCare in 2018 and 2019. *Id.* at ¶¶ 86; 95. Plaintiffs each paid Trinity a monthly premium to maintain their healthcare

coverage.  *Id.* at ¶¶ 88; 96.  By enrolling in AlieraCare, Plaintiffs expected that, in exchange for their premiums, Trinity would pay certain claims for their coverage as detailed by the Member Guide.  *Id.* at ¶¶ 93–94; 99–101.  However, Plaintiffs were each denied healthcare coverage under AlieraCare after submitting their individual claims to Trinity.  *Id.*

C.  Procedural History

Plaintiffs filed this suit, on behalf of themselves and the putative class, alleging that Defendants Aliera and Trinity sold them unauthorized health insurance plans in violation of Washington law.  FAC at ¶¶ 17–19; 103; 105.  They are seeking to rescind their insurance contracts, or, alternatively, to reform their illegal contracts to meet the mandatory minimum benefits required under Washington law; and to recover the insurance premiums they paid.  *Id.* at ¶¶ 17–19.  Plaintiffs also seek to recover damages under Washington's Consumer Protection Act, alleging that Defendants unfairly and deceptively marketed, sold, and administered unauthorized insurance plans to Washington residents without having obtained the required approval for insurance plan(s) from the Washington State Insurance Commissioner.  *Id.*

Defendants Aliera and Trinity seek dismissal of all counts in the First Amended Complaint, on various grounds.  *See* Defs.' MTD.  Both Defendants argue that this putative class action should be dismissed because Plaintiffs have failed to exhaust the dispute resolution procedures set out in the Member Guide. In addition, Defendant Trinity argues that Plaintiffs' claims are preempted by the Internal Revenue Service's ("IRS") purported approval and recognition of Trinity as a legitimate HCSM under the ACA.  Finally, Defendant Aliera contends that Plaintiffs' contract claim should be dismissed as inadequately pled under Federal Rule of Civil Procedure 12(b)(6).

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677–78.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. at 678, quoting *Twombly*, 550 U.S. at 555, 557.  When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the non-moving party, accepting all well-pleaded facts as true and drawing all reasonable inferences in the non-moving party's favor.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658, 661 (9th Cir. 1998).  The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

While a court generally does not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss, there are certain exceptions.  Relevant to the instant motion, the Court may consider documents appended to the complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  In this case, the Trinity Member Guide, the contract at issue, has been appended to the First Amended Complaint, which the Court therefore considers in the context of this motion.

## IV.   DISCUSSION

The issue in this case is whether Defendants sold Plaintiffs illegal insurance plans.  Plaintiffs

contend that Trinity fails to meet the statutory requirements for an HCSM, and therefore, its AlieraCare plans are health insurance and are not exempt from Washington insurance law.  Pls.' Resp. at 2, ¶ 1; 13, ¶ 2.  Defendant Trinity contends that Trinity is a valid HCSM, and, therefore, that the organization is exempt from federal and state insurance laws.  *See* Def. Trinity's MTD at 12–14.

A.  Plaintiffs have sufficiently pled that Trinity does not qualify as a valid HCSM under the ACA.

Defendant Trinity's main argument for dismissal is that Trinity is an HCSM and therefore not an insurance company under either federal or state law.  In support of this position, Trinity claims that it has been approved and is currently classified as an HCSM by the IRS.  Trinity points out that the IRS has not "imposed a taxpayer penalty on any Plaintiff for failure to maintain minimum essential coverage" as required by the ACA.  *See* Def. Trinity's MTD at 12, ¶ 1.  Since no participant has been penalized, Trinity concludes, the IRS must view Trinity as a legitimate HCSM.  *Id.*

Plaintiffs counter that Trinity does not meet the federal definition of an HCSM under 26 U.S.C. § 5000A because neither Trinity nor Aliera existed prior to December 31, 1999, as required to be exempt from the ACA.  Pls.' Resp. at 2, ¶ 1.  As such, Plaintiffs argue, Trinity has been falsely representing to Plaintiffs that Trinity is a legitimate HCSM under both the ACA and Washington law.  *Id.*

Plaintiffs' allegations, taken as true for purposes of these motions, raise serious questions regarding Trinity's status as a legitimate HCSM.  Defendant Trinity has failed in its motion to address, let alone dispute, Plaintiffs' allegation that neither Defendant was in existence as of December 31, 1999, as required by the ACA exemption provisions.  Taking this allegation as true,

7

as it must at this stage, the Court concludes, for purposes of these motions, that Trinity does not qualify as an HCSM under the ACA.

Defendant Trinity's argument that Trinity qualifies as an HCSM because Plaintiffs have not been penalized by the IRS is unavailing. In the face of the undisputed fact of Trinity having been formed after December 31, 1999, Defendant Trinity is relying on what may be little more than an administrative oversight. The IRS's failure to enforce its own rules hardly qualifies as proof of Trinity's legal status, nor forms a basis on which Defendants might claim a "preemption." Defendants have demonstrated only that Trinity has received 501(c)(3) tax-exempt status from the IRS, which is not the equivalent of being an HCSM under the law.

Defendant Trinity has not provided sufficient facts to negate Plaintiffs' plausible allegation that Trinity is not a legitimate HCSM under federal and state law. Taking Plaintiffs' allegations as true as the Court must at this stage in litigation, the Court concludes that Plaintiffs have sufficiently alleged that Trinity is not a legitimate HCSM under 26 U.S.C. § 5000A, as neither Trinity nor Aliera existed prior to December 31, 1999.

B. Plaintiffs have sufficiently pled that the Dispute Resolution Procedures within Trinity's contracts are in violation of Washington insurance law and therefore not mandatory.

Both Defendants seek dismissal on the grounds that Plaintiffs have failed to comply with the dispute resolution and appeals process contained in the parties' agreement. Def. Aliera's MTD at 1; Def. Trinity's MTD at 1. Those provisions generally require Plaintiffs to pursue four levels of appeals, culminating in mediation and binding arbitration. *See* Member Guide at 36–37, Ex. B to FAC. Defendant Trinity also argues that its procedures need not comply with Washington insurance law because AlieraCare is not insurance and "does not offer the same member benefits as insurance products." *See* Def. Trinity's MTD at 2, ¶ 3.

Plaintiffs claim they are not obligated to comply with the contract's procedures, however, because Trinity is an insurance company and Washington law prohibits insurance companies from requiring multiple levels of review and binding arbitration to resolve disputes with its customers. Pls.' Resp. at 11–12. *See also* WAC 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(7) ("For individual health plans, a carrier must provide for only one level of internal review before issuing a final determination, and may not require two levels of internal review."). To support their position, Plaintiffs claim that Defendants' health plans have identical attributes to those of conventional health insurance and, accordingly, fit squarely within the definition of "insurance" under Washington law. *Id.* at 3–4.

1. *Defendants' AlieraCare Plans*

The Court must first determine whether AlieraCare qualifies as insurance under Washington law. *See* RCW 48.01.040 ("Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.").

Taking Plaintiffs' plausible allegations as true, Plaintiffs have sufficiently established that AlieraCare is an insurance plan. First, Defendants' plans are marketed as "providing payment benefits in the event of specified health-related contingencies in exchange for a monthly payment." *Id.* at 3, ¶ 5. Defendants call this monthly contribution a "premium" much like traditional health insurance companies do. *Id.* at 4, ¶ 1. Like other health insurance products, Defendants offer AlieraCare plans with different benefit levels and varying monthly premiums. *Id.* at 3, ¶ 5. The cost of these premiums "depends on the program selected, which include 'interim medical,' 'comprehensive,' 'standard,' 'basic care,' and 'catastrophic.'" *Id.* at ¶ 2. Each plan requires its members to pay deductibles before their medical costs are eligible to be paid in accordance with Trinity's Member Guide. *Id.* at 4, ¶ 3. The Member Guide, much like a conventional health insurance benefits booklet, details when pre-authorizations are required for non-emergency

1   medical procedures; lists preferred provider networks where members can go to seek medical care;
2   and specifies which health-related medical costs are covered under each plan.  *See* Member Guide,
3   Ex. B to FAC.

4          Defendant Trinity's argument that its plans are not *de facto* insurance, merely because
5   "members are repeatedly advised that Trinity's sharing program is not health insurance, nor a
6   legally binding agreement to reimburse any member for medical needs a member may incur," is
7   unconvincing.  *See* Def. Trinity's MTD at 3, ¶ 2.  In the face of the undisputed allegation that
8   AlieraCare has almost identical attributes to those of conventional health insurance plans, Trinity
9   points only to its own representations in its Member Guide and on its website as evidence that its
10  plans are not health insurance.  At most, this creates a dispute of fact.  At this stage, however, the
11  Court must take as true Plaintiffs' plausible allegations, which support the conclusion that
12  AlieraCare plans fit within the definition of "insurance" under Washington law.  Therefore, the
13  Court concludes that Trinity is an insurance company for purposes of Defendants' Motions to
14  Dismiss.

15          2.   *Enforceability of Dispute Resolution and Appeals Process within the Member Guide*

16          The Court now turns to the question of whether Plaintiffs are required to exhaust the dispute
17  resolution procedures contained in the Member Guide before bringing this suit.  Washington
18  insurance law requires that, "[f]or individual health plans, a carrier must provide for only one level
19  of internal review before issuing a final determination, and may not require two levels of internal
20  review."  WAC 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(7).  Washington insurance law also prohibits binding arbitration
21  clauses in insurance contracts.  *See* RCW 48.18.200(b) ("[n]o insurance contract delivered or
22  issued for delivery in this state and covering subjects located, resident, or to be performed in this

23

1    state, shall contain any condition, stipulation, or agreement [. . .] depriving the courts of this state

2    of the jurisdiction of action against the insurer.").[1]

3            Plaintiffs argue that the "Dispute Resolution and Appeal" procedures outlined in the

4    Member Guide are unenforceable because Trinity imposes a multi-layered appeals process, which

5    includes binding arbitration.[2]  *See* Member Guide at 37 at ¶ 3, Ex. B to FAC ("If the dispute is not

6    resolved the matter will be submitted to legally binding arbitration in accordance with the Rules

7    and Procedure of the American Arbitration Association.  Sharing members agree and understand

8    that these methods shall be the sole remedy to resolve any controversy or claim arising out of the

9    Sharing Guidelines, and expressly waive their right to file a lawsuit in any civil court against one

10   another for such disputes; except to enforce an arbitration decision.  [. . .]  The aggrieved sharing

11   member agrees to be legally bound by the arbitrator's final decision.").

12           The Member Guide contains a statement of beliefs, the obligations of each party, and a set

13   of dispute resolution procedures to follow in case of a dispute.  *See* Member Guide at 36–37, Ex.

14   B to FAC.  The procedures require members to first call Trinity and attempt to resolve their

15   disputes by phone.  *Id.*  If members are unsatisfied, they may request a review by an Internal

16   Resolution Committee made up of three Trinity officials.  *Id.*  The request must be in writing and

17

18   ---

[1] Although Defendants argue that RCW 48.18.200 conflicts with the Federal Arbitration Act, this statute is exempt

19   from federal preemption because it falls within the "business of insurance" exception of the McCarran-Ferguson Act.
     *See Washington State Dept. of Trans. v. James River Ins. Co*., 292 P.3d 118, 124 (Wash. 2013) (holding that RCW

20   48.18.200(1)(b) regulates the "business of insurance" and is therefore shielded from preemption under federal law
     because it is "aimed at protecting the performance of an insurance contract by ensuring the right of the policyholder
     to bring an action in state court to enforce the contract.").

21   [2] Plaintiffs present several reasons why they are not required to first exhaust the alternative dispute resolution
     procedures before bringing this class action suit, including the following: (1) Washington law prohibits an insurance

22   company from imposing multi-layered appeals processes; (2) the appeals process is futile; (3) the underlying process
     only applies to challenges to claim determinations (i.e. breach of contract disputes), which is not the subject of the

23   underlying dispute; and (4) Washington law prohibits an insurance company from requiring binding arbitration, so
     the process is void because the first four steps in the appeals process cannot be severed from the arbitration
     requirement.  The Court has reviewed the Defendants' reply briefs in response to these arguments, all of which assume
     that Trinity is not an insurance company under Washington law.  *See* Dkt. Nos. 29; 30.  Therefore, the Court need not
     discuss of each of these arguments.

state the relevant facts and underlying reasons for the dispute; Trinity will then issue a decision within 30 days.  *Id.*  Third, if the members are unsatisfied, they may ask that the dispute be submitted to an External Resolution Committee.  *Id.*  This committee is made up of members in good standing, who are randomly chosen by Trinity.  *Id.*  Fourth, the members must make a "final appeal" and ask that the dispute be submitted to a medical expense auditor who will review the dispute and decide on the dispute within 30 days.  *Id.*  Fifth, if the members remain unsatisfied, they must submit the dispute to mediation.  *Id.*  After complying with these procedures, the members must then submit their dispute to legally binding arbitration.  *Id.*

As stated above, the Court finds that Plaintiffs have sufficiently alleged that Trinity is an insurance company, because the AlieraCare plans that Defendants created, marketed and sold are insurance.  For purposes of resolving these motions, therefore, Trinity is subject to Washington insurance law.  Because Trinity's dispute resolution procedures clearly require more than "one level of internal review before issuing a final determination" and binding arbitration that deprives the Court of the jurisdiction of this action, the Court finds that Plaintiffs have sufficiently pled that Trinity's dispute resolution procedures are illegal under the Washington insurance law.  *See* WAC 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(7); RCW 48.18.200(b).  As such, Plaintiffs are relieved of any obligation to follow the dispute resolution procedures at issue.

## IV. CONCLUSION

The Court hereby DENIES Defendants' motions to dismiss[3].

**IT IS SO ORDERED.**

DATED this 26th day of May, 2020.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

[3] The Court has reached its decision to deny Defendants' motions to dismiss without considering Plaintiffs' motion for judicial notice and therefore declines to rule on that motion at this time.