UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD JACKSON, ROSLYN JACKSON and DEAN MELLOM, Individually and on behalf of all others Similarly situated,<br><br>    *Plaintiffs,*<br>  v.<br><br>THE ALIERA COMPANIES, INC., a Delaware corporation; ALIERA HEALTHCARE, INC., a Delaware Corporation; TRINITY HEALTHSHARE, INC., a Delaware corporation,<br><br>    *Defendants,* | CASE NO. 2:19-cv-01281-BJR<br><br>ORDER DENYING DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION PURSUANT TO 9 U.S.C. §§ 3 AND 4; AND MOTION TO STAY DISCOVERY PENDING DECISION ON MOTION TO COMPEL |

## I. INTRODUCTION

Plaintiffs Gerald Jackson, Roslyn Jackson, and Dean Mellom ("Plaintiffs") bring this putative class action suit against Defendants Aliera Companies, Inc., including its now-defunct subsidiary Aliera Healthcare, Inc. (collectively "Aliera"), and Trinity HealthShare, Inc. ("Trinity"). *See* First Am. Compl. ("FAC"), Dkt. No. 16. Plaintiffs allege that Defendants sold them unauthorized health insurance plans in violation of Washington law and engaged in unfair and deceptive practices in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq. Id.* at ¶¶ 17–19; 103; 105.

1

Currently before the Court is Defendants' consolidated motion to compel arbitration and motion to stay discovery[1] ("the motion to compel").  *See* Defs.' Mot. to Compel Arb., Dkt. No. 52.[2]  Plaintiffs oppose the motions.  *See* Pls.' Resp. to Defs.' Mot. to Compel Arb., Dkt. No. 53. The Court heard arguments on June 9, 2020.  *See* Dkt. Nos. 53, 56.  Having reviewed the motions and opposition thereto, the record of the case, the relevant legal authority, and having heard oral argument, the Court will deny the motion to compel.  The reasoning for the Court's decision follows.

## II.   BACKGROUND

Defendant Trinity offers a healthcare cost sharing plan known as "AlieraCare" and Defendant Aliera markets, sells, and administers AlieraCare in Washington State on behalf of Trinity.  *See* FAC at ¶ 11.  According to Plaintiffs, Trinity is a health insurance company and AlieraCare is a health insurance plan, and therefore subject to federal and state laws governing health insurance companies.  *See* FAC at ¶ 7.  Defendants counter that Trinity is not an insurance company and does not provide health insurance.  *See* Defs.' Answers to Pls.' Second Am. Compl., Dkt. Nos. 62, 63.  Instead, Defendants assert that Trinity is a health care sharing ministry[3] ("HCSM") that facilitates the sharing of healthcare expenses among its members.  *Id*.  The parties agree that AlieraCare provides members with benefits for medical coverage in exchange for their

---

[1] The Court's ruling on the motion to compel arbitration renders the motions to stay moot.

[2] Defendants filed this motion on June 4, 2020.  *See* Defs.' Mot. to Compel Arb.  However, with this Court's permission, Plaintiffs filed a second amended complaint on June 10, 2020, which added two plaintiffs to this action.  *See* Pls.' Second Am. Compl., Dkt. No. 57.  Thereafter, Defendants filed a second motion to compel arbitration and stay proceedings pending arbitration.  *See* Defs.' Second Mot. to Compel Arb., Dkt. No. 61.  Defendants filed the second motion to: (1) compel the new plaintiffs to arbitration; and (2) restate their arguments against the original plaintiffs to the extent that the filing of the second amended complaint mooted the first motion to compel.  *See id.* at 1–2.

[3] HCSMs are organizations in which their members are exempt from having traditional health insurance coverage as required by the federal Patient Protection and Affordable Care Act ("ACA").  *See* 26 U.S.C. § 5000A(b)(1).  To qualify as an HCSM, an organization must meet the requirements listed under 26 U.S.C. § 5000A(d)(2)(B).  Relevant to the instant order, HCSMs are not traditional insurance companies and are exempt from complying with federal and state insurance laws.

1 monthly premiums. *Id.* at ¶ 15.

2       Plaintiffs enrolled in AlieraCare in 2018 and 2019. *Id.* at ¶¶ 86; 95. Plaintiffs, all of whom 3 paid their monthly premiums and met their standard deductibles, expected that Trinity would pay 4 their medical claims as detailed by the AlieraCare benefits booklet ("Member Guide"). *Id*. at ¶¶ 5 31; 93–94; 99–10; *see* Member Guide, Ex. B to FAC, Dkt. No. 16-2. However, each was denied 6 healthcare coverage after submitting their claims to Trinity. *Id*.

7       Important to the instant motion, the Member Guide contains a multi-tiered dispute 8 resolution appeal process. *See* Member Guide at 36–37, Ex. B to FAC. Under this process, in the 9 event a "sharing member" (*i.e*., Plaintiffs) "disagrees" with a determination to deny healthcare 10 coverage and who "believes there is a logically defensible reason why the initial determination is 11 wrong", the sharing member "may file an appeal." *Id.* at 36. The Member Guide sets forth four 12 "Level[s] of Appeal", listing them as "1st Level Appeal" through "Final Appeal." *Id*. at 36–37. 13 The first level of appeal is simply a telephone call to Trinity disputing the determination. *Id*. at 14 36. If the phone call does not resolve the dispute, the sharing member may request that the 15 determination be reviewed by an "Internal Resolution Committee". *Id*. If this does not resolve 16 the dispute, the sharing member may next request that an "External Resolution Committee" review 17 the determination. *Id*. at 36–37. If the sharing member remains unhappy after completing these 18 levels of appeal, he or she may request that a medical expense auditor review the determination. 19 *Id*. at 37. If the sharing member remains dissatisfied after the expense auditor's review, he or she 20 must submit the dispute to mediation. *Id*. The final level of appeal is binding arbitration. *Id*.

21       On November 1, 2019, Defendants moved to dismiss the lawsuit for failure to state a claim 22 under Federal Rule 12(b)(6). *See* Defs.' Mots. to Dismiss, Dkt. Nos. 21, 23. Defendants sought 23 dismissal of the case in its entirety on the ground that Trinity is not an insurance company and,

24

3

instead, qualifies as a HCSM under the ACA, and is therefore exempt from Washington's health insurances laws. *Id*. In the alternative, Defendants argued that Plaintiffs filed this lawsuit prematurely because they failed to exhaust the foregoing dispute resolution procedures as outlined in the Member Guide. *Id.*

The Court denied Defendants' motions to dismiss on May 26, 2020. *See* Court's Order Den. Defs.' Mots. to Dismiss, Dkt. No. 47. In doing so, this Court concluded that Plaintiffs sufficiently pled allegations, that if proven true, would establish that Trinity is an insurance company subject to Washington's health insurance laws. *Id*. at 9. The Court further concluded that Plaintiffs sufficiently pled that the dispute resolution procedures set forth in the Member Guide are illegal under Washington law and if Plaintiffs' allegations are proven true, Plaintiffs would be relieved "of any obligation to follow" such procedures. *Id*. at 12.

### III.   DISCUSSION

The parties agree that the Federal Arbitration Act ("FAA") governs this dispute. *See* 9 U.S.C. § 1 *et seq*. The FAA provides that arbitration agreements shall "be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Kindred Nursing Ctrs. Ltd. P'ship v. Clark,* — U.S. —, 137 S. Ct. 1421, 1426 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) ("A court may invalidate an arbitration agreement based on 'generally applicable contract defenses [.]'") Ordinarily, it is the federal court that decides whether an arbitration agreement is valid unless the parties delegate the issue of arbitrability to the arbitrator). *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 529–530 (2019) (holding that parties may delegate "gateway" questions of arbitrability to an arbitrator). However, here, the determinative issue for the Court is waiver.

**A.  Waiver of the Right to Compel Arbitration**

4

A court may find that a party has waived his right to demand arbitration. *See Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (holding that a ground for revocation of an arbitration agreement is waiver). Plaintiffs argue that Defendants waived their rights to compel arbitration when they brought their motions to dismiss, thereby subjecting themselves to the forum of the federal court. Defendants disagree.

The threshold question the Court must determine is who decides the issue of whether waiver has occurred. The legal precedent is clear that whether Defendants waived their right to arbitration is for this Court, not the arbitrator, to decide. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) ("We have made it clear that waiver by litigation conduct is" a threshold issue for the "court to decide"); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–1121 (9th Cir. 2008) (stating that the issue of whether a party waived the right to enforce an arbitration clause was "properly heard by the district court").

A party seeking to prove that the right to compel arbitration has been waived must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts. *Newirth*, 931 F.3d 935 at 940 (*Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)) (noting that "[w]aiver of a contractual right to arbitration is not favored," and "any party arguing waiver of arbitration bears a heavy burden of proof"). The Court will analyze each of these factors in turn.

### *i. Knowledge of an Existing Right to Compel Arbitration*

Defendants do not deny knowledge of their right to compel arbitration. What they appear to argue is that their right to arbitrate was not ripe at the time they filed their motions to dismiss and that their motions to dismiss were directed only toward the preliminary dispute resolution

procedures set forth in the Member Guide.  *See* Defs.' Mot. to Compel Arb. at 2, ¶ 1; 5, ¶¶ 1–2.  According to Defendants, since the right to compel arbitration was not ripe, and the motions to dismiss did not include the issue, they did not waive their right to arbitration.  *Id.*

By advancing their claim that the issue of arbitration was not yet ripe when they filed their motions to dismiss, Defendants repeatedly mischaracterize the nature and substance of the alternative dispute resolution process set forth in the Member Guide.  Defendants introduce an artificial separation between the first four levels of appeal and the binding arbitration provision, when no such distinction exists.  The Member Guide contains one set of alternative dispute resolution procedures, containing both the appeals process and the binding arbitration clause.  Defendants were seeking to have the Court declare that the dispute resolution appeals process was enforceable, and that Plaintiffs have failed to comply with the process, which included binding arbitration.

### ii. *Intentional Acts Inconsistent with that Existing Right*

"'There is no concrete test to apply when determining whether a party has engaged in acts that are inconsistent with its right to arbitrate[.]'"  *Newirth*, 931 F.3d at 941 (quoting *Martin*, 829 F.3d at 1125).  Rather, the Ninth Circuit advises district courts to "consider the totality of the parties' actions" and apply a "holistic approach" to evaluate "whether a party's actions 'indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate.'"  *Id.* (quoting *Martin*, 829 F.3d at 1126) (internal quotation marks omitted) (second alteration in original).  In other words, "a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court."  *Id*.

1    The Court finds the Ninth Circuit's recent decision in *Newirth v. Aegis Senior
2 Communities, LLC* instructive.  931 F.3d 935 (9th Cir. 2019).  In *Newirth,* residents of several
3 assisted living communities sued the operator of the facilities in state court, alleging fraud under
4 several state statutes.  *Id*.  The defendant removed the action to federal district court, and
5 concurrently filed a motion to compel arbitration and a motion to dismiss.  *Id.* at 938.  However,
6 instead of pursuing these motions, the parties filed a stipulated motion whereby the plaintiff filed
7 an amended complaint and the defendant withdrew its motions.  *Id.* at 939.  The defendant filed a
8 new motion to dismiss shortly thereafter, but it did not renew the motion to compel arbitration.  *Id*.
9 Over the next eleven months, the parties agreed on a briefing schedule, several protective orders,
10 and joint stipulations; and engaged in several pretrial conferences, settlement negotiations, and
11 meet and confers regarding their plan for discovery.  *Id*.

12    The district court eventually denied the defendant's pending motion to dismiss and,
13 thereafter, the defendant filed a renewed motion to compel arbitration, almost a year after
14 withdrawing the initial motion to arbitrate.  *Id.* at 942.  The district court denied the motion, finding
15 that the defendant had waived its right to arbitrate finding it had acted inconsistently with that right
16 by litigating the arbitrable claims for over a year and filing its renewed motion to compel
17 arbitration only after receiving an adverse ruling from the court.  *Id.* at 938.  The defendant
18 appealed the district court's denial of its motion to compel arbitration, including its determination
19 that it had waived the right to arbitrate.  *Id.*

20    The Ninth Circuit upheld the district court's decision, finding that the defendant had acted
21 inconsistently with its right to arbitrate because it "proceeded to take advantage of the federal
22 forum by filing a motion to dismiss *Newirth's* arbitrable claims" and "[o]nly after receiving an
23 adverse ruling on this motion did . . . [the defendant] refile the motion to compel arbitration[.]"
24

*Id.* at 942.  In its holding, the Ninth Circuit explained that a party "[s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." *Id.* at 941 (citing *Martin*, 829 F.3d at 1126).  As such, "[u]nder the totality of these circumstances[,]" the defendant "knowingly decided to defer its right to compel arbitration to avail itself of the benefits of the federal court forum, an intentional action inconsistent with its known right to compel arbitration." *Id.* at 942.

Like the defendant in *Newirth,* Defendants here waited almost a year to compel arbitration. During that time, Defendants actively engaged in the discovery process, participating in discovery conferences, filing motions to dismiss on the merits of several key issues, entering into court-approved protective orders and joint stipulations, and working with Plaintiffs' counsel to set a case management schedule[4].  *See* Dkt. No. 17 (joint status report); Dkt. No. 38 (stipulated protective order); Dkt. No. 55, Exhs. D and E (attorney declaration documenting discovery conferences); *Id.* at Exh. C (attorney declaration summarizing Defendant-produced discovery pertaining to named plaintiffs).  Defendants also filed a joint status report as required per the local rules.  *See* Dkt. Nos. 9 (local rules); 17 (joint status report).

Here, as in *Newirth*, Defendants "proceeded to take advantage of the federal forum" by also seeking to dismiss their case on the merits of several key issues, including Trinity's status as an insurer.  *Id.* at 942.  To avoid this conclusion, Defendants once again argue that compelling arbitration before moving to dismiss would have been premature because Plaintiffs had not yet exhausted the preceding steps in the dispute resolution appeals process as set forth in the Member

---

[4] *See Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding defendants engaged in conduct inconsistent with their right to arbitrate by "devoting 'considerable time and effort' to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, [and] answering discovery"); *see also Van Ness Townhouses v. Mar Indus. Corp*., 862 F.2d 754, 759 (9th Cir. 1988) (finding that defendant "chose [. . .] to litigate actively [. . .]" by filing pleadings, motions, including filing a motion to dismiss for failure to state a claim, and approving a pre-trial conference order).

Guide.

Instead of initially moving to compel arbitration, Defendants filed their motions to dismiss and went to great lengths in their motions to explain that the dispute resolution appeal procedures as set forth in the Member Guide—which, of course, include the arbitration clause—are enforceable and why this Court should dismiss Plaintiffs' lawsuit for failing to comply with those procedures. *See* Def. Trinity Mot. to Dismiss at 10, Dkt. No. 21; Def. Aliera Mot. to Dismiss at 3–7, Dkt. No. 23. In other words, Defendants sought a determination from this Court as to the validity of the procedures, including the final level of appeal—binding arbitration—and their applicability to the parties. *Id*. Defendants admit they "—explicitly—did not raise arguments related to the enforceability of the arbitration clause in their Motions to Dismiss[,]" Defs.' Mot. to Compel Arb. at 2, ¶ 1, demonstrating that they made "an intentional decision not to move to compel arbitration" until they received an adverse ruling from this Court, *Newirth*, 931 F.3d at 941.

Nor is this Court persuaded by Defendants' claim that by filing the motion to dismiss, they were not seeking a definitive ruling by the Court that Trinity is an HCSM under the ACA and, therefore, exempt from federal and state health insurance law. Rather, Defendants argue, they were simply seeking a ruling that Plaintiffs failed to sufficiently allege facts that, if taken as true, would establish that Trinity is an insurance company and subject to Washington insurance law. *See* Defs.' Mot. to Compel Arb. at 2, ¶ 2. The Court finds otherwise. Defendants did not simply challenge the strength of Plaintiffs' allegations; rather, they argued that the Internal Revenue Service ("IRS") had previously determined that Trinity "is a bona fide non-profit HCSM" and therefore exempt from "Plaintiffs' state law claims as a matter of settled law."[5] Def. Trinity Mot.

---

[5] Defendant Trinity's preemption argument fails. As an initial matter, there is no preemption issue because Washington law defers to the federal statute to determine whether an organization is a valid HCSM. *See* RCW 48.43.009 ("Health care sharing ministries are not health carriers as defined in RCW 48.43.005 or insurers as defined

to Dismiss at 2. As such, Defendant Trinity argued, Plaintiffs' claims should be "dismissed with prejudice[.]" *Id*.

Defendant Aliera suggests that because it did not move to dismiss "with prejudice[,]" *Newirth* becomes distinguishable and its holding is no longer applicable to its motion. Def. Aliera's Reply at ¶ 2. However, Defendant Aliera sought dismissal on substantive grounds alleging that Plaintiffs failed to state a claim, thus requiring the Court to rule on the merits of a dispositive issue. Def. Aliera Mot. to Dismiss at 2. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)) ("Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits.'"). As the Ninth Circuit further explained, "[w]hen defendants move for dismissal . . . on a key merits issue that would preclude relief as to one or more of plaintiffs' claims . . . they are seeking a ruling on the merits." *Newirth*, 931 F.3d at 942 (citing *Martin*, 829 F.3d at 1126 n.4). Several Circuits also agree that a party moving to dismiss a suit for failure to state a claim seeks a judgement on the merits and has waived any rights to compel arbitration. *See Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 501 (7th Cir. 2018) ("[A] motion [to dismiss] seeking a determination that the plaintiff's legal theory does not state a claim is evidence of waiver because success by the defendant ends 'the case just as surely as a judgment entered after a trial.'"); *Hooper v. Advance Am., Cash Advance Centers of Missouri*, Inc., 589 F.3d 917, 921 (8th Cir. 2009) (finding waiver when Defendants "asserted Plaintiffs failed to state claims upon

---

in RCW 48.01.050. For purposes of this section, 'health care sharing ministry' has the same meaning as in 26 U.S.C. Sec. 5000A."). Defendant Trinity claims it was recognized by the IRS as a valid HCSM, relying on two documents: (1) Trinity's Form 1023 Application for 501(c)(3) status to the IRS; and (2) the IRS's determination letter indicating Trinity is recognized as a 501(c)(3) nonprofit organization. However, neither document supports its assertion that Trinity was approved as a HCSM in accordance with the requirements set forth by 26 U.S.C. § 5000A(b)(1). Furthermore, this statute also does not authorize the IRS to determine whether an organization meets the statutory definition of a HCSM under the ACA. Therefore, the record and the statute governing HCSMs do not support Trinity's position that it was recognized by the IRS as a HCSM or that the Court is preempted from determining whether it meets the statutory definition of a HCSM under the ACA.

which relief could be granted, and encouraged the district court to resolve the parties' entire dispute in [their] favor").

While Defendants argue that during this time, they repeatedly asserted that they were not waiving their right to compel arbitration (*see*, *e.g.*, Def. Aliera's Resp. to Pls.' First Reqs. for Produc. of Docs., Ex. A to Spoonemore Decl., Dkt. No. 55; Def. Trinity's Mot. to Dismiss), such protestations are insufficient. *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (a "statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."); *see also id.* (quoting *In Re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."); *Hooper v. Advance Am., Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.")). *See also Ingels v. Harris*, 91 F.3d 152 (9th Cir. 1996) (quoting *Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867, 868 (9th Cir. 1988)) ("[A] party may waive its right to insist upon arbitration when it acts in a manner inconsistent with assertion of the right to arbitrate and causes the plaintiffs prejudice.").

Therefore, this Court concludes that Defendants acted as if they are "'active[ly] litigat[ing]' [in federal court], *i.e.*, to forgo the right to compel arbitration and take advantage of a judicial forum." *Newirth*, 931 F.3d at 941 (quoting *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990)). Accordingly, the Court concludes Plaintiffs have met their burden to show Defendants engaged in conduct that was inconsistent with the right to arbitrate.

### *iii. Prejudice to Person Opposing Arbitration from Such Inconsistent Acts*

Defendants argue that Plaintiffs cannot show that they were prejudiced by Defendants' actions. *See* Def. Aliera's Reply at 3; Def. Trinity's Reply at 3. "To prove prejudice, plaintiffs

11

must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement." *Martin*, 829 F.3d at 1126 (internal quotations omitted). Plaintiffs can make this showing by demonstrating "that they have incurred costs that they would not otherwise have incurred, . . . that they would be forced to relitigate an issue on the merits on which they have already prevailed in court." *Id*. (citations omitted).

Here, like in *Newirth*, Defendants' decision to proceed in this federal forum caused Plaintiffs to incur costs in responding to Defendants' motions to dismiss. If the Court were to grant Defendants' motion to compel arbitration, Plaintiffs would be "forced 'to relitigate a key legal issue [on the merits] on which the district court has ruled in . . . [their] favor.'" 931 F.3d at 944 (quoting *Martin*, 829 F.3d at 1128). Plaintiffs would incur additional costs rearguing this Court's ruling. Accordingly, Plaintiffs have carried their heavy burden of showing prejudice.

For the foregoing reasons, considering the totality of the circumstances, the Court finds that Plaintiffs have carried their burden of demonstrating that Defendants waived their right to arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' consolidated motion to compel arbitration. Given the Court's ruling, the Motion to Stay the Proceedings Pending Arbitration, and Stay Discovery Pending a Decision on the Motion to Compel Arbitration are stricken as moot.

DATED this 20th day of July, 2020.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE