UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACKSON, *et al*.<br><br>  Plaintiffs,<br><br>v.<br><br>THE ALIERA COMPANIES, INC., *et al*.<br><br>  Defendants. | Case No.: 19-cv-01281-BJR<br><br>ORDER GRANTING MOTION TO COMPEL AND STAY PROCEEDINGS |

## I.   INTRODUCTION

Plaintiffs Gerald Jackson, Roslyn Jackson, Dean Mellom, Jon Perrin, and Julie Perrin ("Plaintiffs") bring this putative class action suit against Defendants Aliera Companies, Inc., including its now-defunct subsidiary Aliera Healthcare, Inc. (collectively "Aliera"), and Trinity HealthShare, Inc. ("Trinity").[1] Plaintiffs allege that Defendants sold them unauthorized health insurance plans in violation of Washington law and engaged in unfair and deceptive practices in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq*.

Currently before the Court is Defendants' Motion to Compel Plaintiffs Jon and Julie Perrin to arbitrate their claims and to stay the proceedings as to those claims pending arbitration. Dkt.

---

[1] The Jacksons and Mr. Mellom were the original plaintiffs in this action. Plaintiffs filed a Second Amended Complaint in July 2020 and added the Perrins as named plaintiffs. Dkt. Nos. 57, 67.

1

No. 61. Plaintiffs oppose the motion. Dkt. No. 83. Having reviewed the parties' pleadings, the record of the case, and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

Defendant Trinity offers a healthcare cost sharing plan known as "AlieraCare" and Defendant Aliera markets, sells, and administers AlieraCare in Washington State on behalf of Trinity. *See* Dkt. No. 57, Second Amend. Comp. ("SAC"). According to Plaintiffs, Trinity is a health insurance company and AlieraCare is a health insurance plan, and therefore subject to federal and state laws governing health insurance companies. Defendants counter that Trinity is not an insurance company and does not provide health insurance. *See* Defs.' Answers to Pls.' Second Am. Compl., Dkt. Nos. 62, 63. Instead, Defendants assert that Trinity is a healthcare sharing ministry ("HCSM") that facilitates the sharing of healthcare expenses among its members. Regardless, the parties agree that AlieraCare provides members with benefits for medical coverage in exchange for their monthly premiums.

Plaintiffs enrolled in AlieraCare in 2018 and 2019. Plaintiffs, all of whom paid their monthly premiums and met their standard deductibles, expected that Trinity would pay their medical claims as detailed by the AlieraCare benefits booklet ("Member Guide"). *See* Member Guide, Dkt. No. 57, Ex. B.  However, each was denied healthcare coverage after submitting their claims to Trinity. Thereafter, Plaintiffs initiated this lawsuit.

In November 2019, Defendants moved to dismiss the lawsuit for failure to state a claim under Federal Rule 12(b)(6). Dkt. Nos. 21, 23. Defendants sought dismissal of the case in its entirety on the grounds that Trinity is not an insurance company and, instead, qualifies as a HCSM under the Affordable Care Act, and is therefore exempt from Washington's health insurances laws.

1  *Id.* In the alternative, Defendants argued that Plaintiffs filed this lawsuit prematurely because they
2  failed to exhaust dispute resolution procedures outlined in AlieraCare's Member Guide. *Id.* The
3  Court denied Defendants' motions to dismiss in May 2020. Dkt. No. 47. In doing so, this Court
4  concluded that Plaintiffs sufficiently pled allegations that, if proven true, establish that Trinity is
5  an insurance company subject to Washington's health insurance laws. *Id.* at 9. The Court further
6  concluded that Plaintiffs sufficiently pled that the dispute resolution procedures set forth in the
7  Member Guide are illegal under Washington law and if Plaintiffs' allegations are proven true,
8  Plaintiffs would be relieved "of any obligation to follow" such procedures. *Id.* at 12.

9  Thereafter, Defendants move to compel Plaintiffs' claims to arbitration based on the
10 dispute resolution procedures set forth in the Member Guide. Dkt. No. 52. After the motion was
11 fully briefed, but before the Court decided the issue, Plaintiffs filed a second amended complaint
12 in which they added Jon and Julie Perrin as plaintiffs. Dkt. No. 57. In response, Defendants filed
13 the instant motion to compel the Perrins to arbitrate their claims as well. Dkt. No. 61. On July 20,
14 2020, the Court denied Defendants' motion to compel the original Plaintiffs to arbitrate their
15 claims, determining that Defendants waived their right to arbitrate those claims. Before the Court
16 now is Defendants' motion to compel the Perrins to arbitrate their claims.

### III.   DISCUSSION

18 Defendants move to compel the Perrins to arbitrate their claims pursuant to the binding
19 arbitration clause that is part of the dispute resolution procedures set forth in AlieraCare's Member
20 Guide. In relevant part, the arbitration clause provides:

> If the dispute is not resolved the matter will be submitted to legally binding arbitration in accordance with the Rules and Procedures of the American Arbitration Association. Sharing members agree and understand that these [dispute resolution] methods shall be the sole remedy to resolved any controversy or claim arising out of the Sharing Guidelines, and expressly waive their right to file a lawsuit in any civil court against one another for such disputes; except to enforce

>an arbitration decision. … The aggrieved sharing member agrees to be legally bound by the arbitrator's final decision.

Dkt. No. 57, Ex. 2 at 35.[2]

The parties dispute whether the foregoing arbitration clause is valid and enforceable. Defendants assert that it is; Plaintiffs counter that the clause is void under Washington law, specifically RCW 48.18.200(b), which prohibits binding arbitration clauses in Washington insurance contracts. However, before reaching the merits of this argument, this Court must first determine whether it has the authority to resolve the issue of the clause's validity.

### A.   Who Has the Authority to Determine the Validity of the Arbitration Agreement: The Court or the Arbitrator?

"Congress enacted the Federal Arbitration Act (FAA) in 1925 'in response to a perception that courts were unduly hostile to arbitration.'" *Newirth v. Aegis Senior Comm., LLC*, 931 F.3d 935, 939-40 (9th Cir. 2019) (quoting *Epic Sys. Corp. v. Lewis*, ⎯⎯ U.S. ⎯⎯, 138 S. Ct. 1612, 1621 (2018)). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is ordinarily the court's role to determine whether a valid arbitration agreement exists, *see Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000), but parties to an arbitration agreement can agree to delegate the gateway issue of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). When an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, a court must send that question to arbitration. *Id*. at 80. The incorporation of the American Arbitration Association ("AAA") rules and procedures into the arbitration agreement

---

[2] Plaintiffs suggest that the Perrins' Member Guide did not contain a binding arbitration agreement. *See* Dkt. No. 83 at 2-3. However, this allegation contradicts the Perrins' allegation in the Second Amended Complaint in which they concede they received a Member Guide with the arbitration clause in it when they enrolled in AlieraCare. Dkt. No. 57 at ¶ 104.

4

"constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

Here, as set forth above, the disputed arbitration clause incorporates the AAA rules; therefore, the issue of arbitrability has been delegated to the arbitrator.[3] However, Plaintiffs argue that it is still for this Court to determine the issue of arbitrability. According to Plaintiffs, this Court must resolve the issue of arbitrability because Plaintiffs challenge the arbitration clause—including its incorporation of the AAA rules.

Challenges to arbitration agreements "can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole …". *Id.* This distinction is important because a challenge to the validity of the agreement to arbitrate is resolved by the court; a challenge to the validity of the contract as a whole is resolved by the arbitrator. *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1264-65 (9th Cir. 2006) (stating that "when the crux of the complaint challenges the validity or enforceability of the agreement containing the arbitration provision, then the question of whether the agreement, as a whole, is unconscionable must be referred to the arbitrator" but that "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration clause provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable").

The Ninth Circuit further clarified this distinction in *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp*., 622 F.3d 996 (9th Cir. 2010), explaining that a court decides the issue

---

[3] Plaintiffs suggest that courts should not conclude that the incorporation of the AAA rules in a contract constitutes clear and unmistakable evidence that the parties delegated the issue of arbitrability to the arbitrator if at least one of the parties is not "sophisticated". Dkt. No. 83 at 10. The Ninth Circuit has expressly rejected this argument. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that the incorporation of the AAA rules constitutes 'clear and unmistakable evidence of the parties' intent' to delegate arbitrability to the arbitrator).

5

of the validity of an arbitration clause "when a plaintiff argues that [the] clause, standing alone, is unenforceable—for reasons *independent of any reasons the remainder of the contract might be invalid*." *Id*. at 1000 (emphasis added); *Id*. at 1001-02 (a court decides the validity question when the arbitration clause's validity "is an *entirely distinct* issue from the contract claims in the case") (emphasis added). Conversely, the Ninth Circuit noted, if "[t]he 'crux of the complaint' … makes clear that the challenge to the arbitration clause is the *same challenge* that is being made to the entire contract," validity is decided by the arbitrator. *Id*. at 1001 (emphasis added).

Thus, in *Bridge Fund*, the Ninth Circuit determined that the issue of arbitrability was properly before the district court when the plaintiffs in that case specifically challenged the arbitration agreement as unenforceable because it: "(1) was not mutually entered into; (2) improperly limit[ed] Plaintiffs' damages; (3) impermissibly shorten[ed] the statute of limitations; (4) contain[ed] invalid place and manner restrictions; (5) [sought] to negate Plaintiffs' unwaivable rights under the CFIL; and (6) wrongly ban[ned] class and consolidated actions[.]" *Id.* at 1002. The Ninth Circuit noted that each of these challenges to the arbitration clause is distinct "from Plaintiffs' challenge to the validity of the [underlying] franchise agreement as a whole." *Id*. In reaching its decision, the Ninth Circuit contrasted the *Bridge Fund* plaintiffs' challenges to the arbitration agreement with those raised in *Nagrampa*, noting that in that case the issue of arbitrability was for the arbitrator to decide because the *Nagrampa* plaintiffs did not raise a distinct challenge to the arbitration clause but, rather, simply alleged that the clause was "unenforceable because it was contained in an illegal usurious contract which was void *ab initio*." *Id.* at 1001 (quoting *Nagrampa*, 469 F.3d at 1268).

Here, Plaintiffs claim that AlieraCare is illegal because it is an "unauthorized health insurance plan(s) in violation of Washington law." Dkt. No. 57 at ¶ 123. They charge that the

arbitration clause is unenforceable because Washington law prohibits binding arbitration agreements in insurance contracts. *Id*. at ¶ 126(c)(i). In other words, Plaintiffs' basis for arguing that AlieraCare is illegal and their basis for arguing that the arbitration clause is void are the same: AlieraCare is an unauthorized health insurance plan that runs afoul of Washington insurance law. Thus, Plaintiffs' challenge to the arbitration clause is the same challenge to AlieraCare as a whole and must be decided by the arbitrator. *Bridge Fund*, 622 F.3d at 1001-02; *see also G&K, P.A. v. Willett*, 2012 WL 1438474, *5 (D. Ariz. April 25, 2012) ("Yakima does not present a basis for invalidating the arbitration clause that is 'independent of any reasons the remainder of the contract might be invalid' or 'an entirely distinct issue from the contract claims in the case … [a]s a result, Yakima's challenge to the arbitration clause must be decided by the arbitrator.") (quoting *Bridge Fund*, 622 F.3d at 1001-02).

### B. Whether Defendants Waived Their Right to Compel the Perrins to Arbitration

Having determined that the arbitrator must decide the threshold issue of whether the arbitration clause is enforceable, the Court will turn to Plaintiffs' claim that Defendants waived their right to compel the Perrins to arbitration. As stated above, the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Newirth,* 931 F.3d at 940 (quoting 9 U.S.C. § 2). One such ground is waiver. *Id*. Whether a party waived its right to compel arbitration is an issue for the court to decide. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) ("We have made clear that courts generally decide whether a party has waived his right to arbitration by litigation conduct."); *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1120 (9th Cir. 2008) (stating that the issue of whether a party waived the right to enforce an arbitration clause was "properly heard by the district court").

A party seeking to prove that the right to compel arbitration has been waived must carry the heavy burden of demonstrating: (1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts. *Newirth*, 931 F.3d at 940. Plaintiffs have not carried this heavy burden with respect to the Perrins' claims.

While the Court denied the Defendants' motion to compel the original Plaintiffs to arbitration on the grounds of waiver, the analysis is different for the Perrins' claims. This is because until June 10, 2020 when Plaintiffs amended the operative complaint to add Jon and Julie Perrin as named parties in this action, the Perrins were putative class members. This distinction is significant because the Ninth Circuit has clearly stated that a party seeking to prove waiver of the right to arbitration must demonstrate acts inconsistent with the *existing* right to compel arbitration, *see Martin*, 829 F.3d at 1124; *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986), and district courts within this Circuit have determined that a party cannot move to compel putative class members to arbitration prior to class certification because putative class members are not parties to the action. *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (holding that defendants did not waive their right to compel arbitration by filing multiple motions to dismiss because defendants did not have an existing right to compel putative class members prior to class certification); *Brown v. DirecTV, LLC*, 2019 WL 6604879, at *5 (C.D. Cal. 2019) ("As DIRECTV had no occasion to move to compel any absent class members to arbitrate their claims until the class was certified, its supposed delay in asserting an arbitration defense does not amount to conduct inconsistent with its right to compel arbitration."); *Laguna v. Coverall North America, Inc.*, 2011 WL 3176469, *8 (S.D. Cal.

July 26, 2011) ("Defendants cannot move to compel arbitration against putative class members prior to certification of a class.").

While the Ninth Circuit has not yet spoken on this issue, the Eleventh Circuit addressed the issue in *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018). In *Gutierrez*, the Eleventh Circuit noted that seeking to compel putative class members to arbitration prior to class certification is futile because such class members are "speculative and beyond the reach of the Court's power". *Id.* at 1238 (noting that it "would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on any those motions before the class was certified"). This Court finds the Eleventh Circuit's reasoning persuasive. Given that Defendants moved to compel the Perrins to arbitrate their claims within ten days of the Perrins becoming named plaintiffs in this action, and given that Defendants did nothing within that ten-day period to suggest that they intended to waive their right to compel the Perrins to arbitration, this Court finds that Plaintiffs have not met their heavy burden of demonstrating waiver.

## IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Defendants' motion to compel the Perrins' claims to arbitration. The Court further GRANTS Defendants' motion to stay the proceedings in this Court as they relate to the Perrins' claims while the parties arbitrate those claims. The remaining proceedings in this case shall proceed.

Dated this 18th day of August 2020.

							Barbara Jacobs Rothstein
							U.S. District Court Judge

9