The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| GERALD JACKSON, ROSLYN JACKSON, DEAN MELLOM, JON PERRIN AND JULIE PERRIN, individually and on behalf of all others similarly situated, | NO. 2:19-cv-01281-BJR |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: INSURANCE** |
| THE ALIERA COMPANIES, INC., a Delaware corporation; ALIERA HEALTHCARE, INC., a Delaware corporation; TRINITY HEALTHSHARE, INC., a Delaware corporation, | |
| Defendants. | |

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**Table of Contents**

I. INTRODUCTION ............................................................................................ 1

II. UNDISPUTED FACTS ................................................................................... 3

    A. Aliera's Creation by a Convicted Felon. ............................................. 3

    B. Trinity Was Created in 2018. ............................................................... 4

    C. Aliera and Trinity Created, Marketed and Sold Health
       Plans in Washington State. ................................................................. 5

    D. The Aliera/Trinity Plans. .................................................................... 6

    E. The Washington Office of the Insurance Commissioner
       Issued Cease and Desist Orders Against Aliera and
       Trinity. ................................................................................................ 7

    F. Plaintiffs Were Enrolled in the Aliera/Trinity Health
       Plans That Looked Like Genuine Health Insurance. ....................... 8

III. LAW AND ARGUMENT ............................................................................. 9

    A. The Aliera/Trinity Plans Sold to Plaintiffs Are
       "Insurance." ........................................................................................ 9

    B. "Authorized Health Care Sharing Ministry Plans" are a
       Special Exception to Insurance that Do Not Apply to
       Defendnats. ....................................................................................... 16

    C. The Court Should Defer to the Finding by the Washington
       Insurance Commissioner that Aliera/Trinity Plans are
       "Insurance." ...................................................................................... 18

IV. CONCLUSION ............................................................................................ 19

Sɪʀɪᴀɴɴɪ Yᴏᴜᴛᴢ
Sᴘᴏᴏɴᴇᴍᴏʀᴇ Hᴀᴍʙᴜʀɢᴇʀ ᴘʟʟᴄ
3101 Wᴇsᴛᴇʀɴ Aᴠᴇɴᴜᴇ, Sᴜɪᴛᴇ 350
Sᴇᴀᴛᴛʟᴇ, Wᴀsʜɪɴɢᴛᴏɴ 98121
Tᴇʟ. (206) 223-0303 Fᴀx (206) 223-0246

# I. INTRODUCTION

Plaintiffs Gerald and Roslyn Jackson and Dean Mellom ("Plaintiffs") were sold "AlieraCare," an illegal health insurance plan created by Defendants The Aliera Companies, Inc., Aliera Healthcare, Inc. (collectively "Aliera") and Trinity Healthshare, Inc. ("Trinity"). In marketing, selling and administering these plans, Defendants represented to Plaintiffs that Trinity was a "recognized" health care sharing ministry ("HCSM") and therefore exempt from all federal and state laws governing health insurance.

This was simply false: the federal and state statutes defining HCSMs provide that an entity can qualify as an HCSM *only* if it has "been in existence at all times since December 31, 1999" with medical expenses of its members having been "shared continuously and without interruption since at least December 31, 1999." 26 U.S.C. § 5000A(d)(2)(B)(ii); RCW 48.43.009. Trinity admits that it was first created on June 27, 2018, rendering it impossible to fall within the HCSM exemption.[1] Dkt. No. 62, ¶61; Dkt. No. 77, *Exh. B*, p. 13 (supplemental admission to RFA No. 10). No governmental entity "recognized" that Trinity was an HCSM.

Defendants' failure to meet the statutory exemption did not deter them from promoting, selling, and administering their products to Plaintiffs as being part of a "Health Care Sharing Ministry recognized pursuant to 26 U.S.C. §5000A(d)(2)(B)." Dkt. No. 55, ¶8; Dkt. No. 40-8. Defendants sold and administered the plans, while ignoring the array of carefully crafted federal and state laws designed to protect Washington

---

[1] Nor did Trinity limit its participation to members who "share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs" as independently required by state and federal law. 26 U.S.C. § 5000A(d)(2)(B)(ii); RCW 48.43.009. *See* Dkt. No. 55, ¶4, Dkt. No. 40-4, p. 34 of 42 (Washington Office of the Insurance Commissioner ("OIC") concludes, after investigation, that Defendants failed to meet this requirement: "Trinity's contradictory representations about the nature of its religious ethic to State and Federal government agencies and to consumers indicates it either does not understand its religious motivation, or fails to communicate a consistent message about its religious ethic to State and Federal regulators and its own members.").

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

consumers in the health insurance marketplace. Defendants' plans were sold without the necessary surplus, reserves, and reinsurance, designed to make sure that Defendants have sufficient funds to pay out the benefits promised. Defendants also ignored the baseline package of essential health benefits required under Washington law, the law's protections for people with pre-existing conditions, and the required loss ratio that ensures that health insurers spend the vast majority of premiums collected on members' health benefits, among other requirements.

Trinity's sham HCSM plan funneled millions of dollars of monthly premiums into Aliera, a for-profit and privately held enterprise. Consumers paid hundreds – or thousands – of dollars per month for AlieraCare. Regulators have found that over 80% of the premiums paid by these members are actually sent to the privately held, for-profit Aliera as "administrative fees" or paid out in brokers' commissions, with less than 20% of member premiums being used to pay members' health claims.[2] Dkt. No. 57-3, p. 22 of 42. The scheme is perfectly designed to dupe vulnerable people: create products that look exactly like traditional health insurance and sell them under the guise of religion, claiming that Trinity is a "ministry" designed to assist members in their time of medical need. By ignoring the requirements of state and federal law governing health insurance, and, in fact, disclaiming any legal responsibility to pay *any* claims, Defendants turned AlieraCare into a money machine that lined Aliera's – and its founders' – pockets with millions.

This Partial Summary Judgment Motion asks the Court to answer a narrow question: Whether Trinity is "insurance" under Title 48, RCW, and not an "authorized Health Care Sharing Ministry" under 26 U.S.C. § 5000A(d)(2)(B) or RCW 48.43.009. If

---

[2] Washington law requires that at least 74% of premiums be used to pay claims. RCW 48.20.025; RCW 48.44.017; RCW 48.46.062. The ACA raised this floor to require an 80% medical loss ratio for individual policies. 42 U.S.C. § 300gg-18(b)(1)(A)(ii). Defendants turned this requirement on its head.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

successful, this narrow adjudicative fact will form the basis of the Plaintiffs' anticipated motions for partial summary judgment on liability for their illegal contract and CPA claims, and a renewed motion for class certification.

## II. UNDISPUTED FACTS

### A. Aliera's Creation by a Convicted Felon.

Timothy Moses was convicted of felony securities fraud and perjury in federal court in Georgia. *See United States v. Moses*, No. 1:04-cr-508-CAP (N.D. Ga.) at ECF No. 86. He was sentenced to over six years in prison. Dkt. No. 55, ¶2, Dkt. No. 40-2, pp. 10-11 of 33. After he was released, he was subject to supervision for five years. *Id.* Shortly after his release, Mr. Moses misled his supervising probation officer about his financial affairs and failed to disclose bank account information and new lines of credit. *Id.* Mr. Moses's supervised release was terminated in April 2015, approximately six months prior to Aliera's creation. *Id.*

Mr. Moses' wife, Shelley Steele, incorporated Defendant Aliera, a for-profit corporation in Delaware. *See* Hamburger Decl., *Exh. A.* Aliera's original scope of business was "to engage in the business of providing all models of Health Care to the general public," and "[t]o buy, own or acquire other businesses, to market and in any way improve the commercial application to the betterment and pecuniary gain of the corporation and its stockholders…." *Id.* It later amended its Articles to include a broader scope of business: "The purpose for which the Corporation is formed is to engage in any lawful act or activity for which corporations may be organized…" *Id., Exh. B.* Aliera has never been and does not claim to be an HCSM. Dkt. No. 63, p. 16 of 39.

After its formation, Timothy Moses approached and convinced Anabaptist Healthshare, a small nonprofit with a letter of recognition as an HCSM from the federal government, to allow Aliera to market HCSM plans through a subsidiary that Anabaptist would create solely for this purpose, Unity Healthshare. Dkt. No. 55, ¶2,

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 3
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Dkt. No. 40-2, pp. 6-7, 11 of 33. The relationship ended in litigation, however, when Unity learned that Mr. Moses was taking Unity funds without approval. *Id.*, p. 15 of 33; Dkt. No. 55, ¶11, Dkt. No. 40-11, p. 8, ¶14 (Texas AG: "[T]he deal [between Unity and Aliera] unraveled after [Unity] found out that Timothy Moses had used his signature authority on Unity accounts to 'take whatever he wanted' from Unity as payment to Aliera.").

## B. Trinity Was Created in 2018.

With Aliera unable to use an already-existing HCSM to sell its products, it created Defendant Trinity Healthshare, Inc. ("Trinity") on June 27, 2018.[3] Dkt. No. 22-1, p. 27 of 77 (in Trinity's IRS application, "Trinity Healthshare, Inc., became incorporated on June 27, 2018); *id.*, p. 33 of 77 (Trinity "become incorporated on June 27, 2018. Therefore it is applying for 501(c)(3) status as a 'newly formed entity….'"); *id.*, p. 35 of 77 (Delaware Certificate of Incorporation showing Trinity's incorporation date of June 27, 2018); *id.*, p. 19 of 77 (answering "no" to the question, "are you a successor to another organization?"). Trinity had *no* members before it entered into an agreement with Aliera to market HCSM plans. Dkt. No. 63, p. 19 of 39; Dkt. No. 62, p. 19 of 41; Dkt. No. 62, p. 19, ¶65 ("Trinity admits it had no members when it entered the agreement with Aliera…."). It is undisputed that Trinity has not been in existence, with the medical expenses of its members shared continuously, without interruption since December 31, 1999, through at least December 20, 2019 (the date of the Consent Order between the Washington Office of the Insurance Commissioner ("OIC") and Trinity in which Trinity pledged not to

---

[3] Trinity's CEO, William Rip Thead, III was a former Aliera employee and a long-time friend of the Moses family. Dkt. No. 61, p. 18, ¶¶62-63 ("Trinity admits that Mr. Thead was also a close family friend of the Moses family and officiated at Chase Moses wedding."); Dkt. No. 63, p. 7, ¶15 ("Aliera admits Trinity's former Chairman and now Chief Executive Officer, William H. Thead III, was a former Aliera employee with ties to the Moses family.").

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 4
[Case No. 2:19-cv-01281-BJR]

solicit Washington residents to enroll in its programs).[4]  *See* Dkt. No. 55, ¶21, Dkt. No. 40-20.  *See also* Dkt. No. 62, p. 18, ¶61 (Trinity's Answer: "Trinity admits that Trinity was incorporated on June 27, 2018 and registered as a foreign corporation in the State of Georgia on October 26, 2018.").

**C.      Aliera and Trinity Created, Marketed and Sold Health Plans in Washington State.**

Representing Trinity as an HCSM, Aliera created, marketed, and sold health plans to consumers in Washington State.  Dkt. No. 55, ¶¶3-4 8-10; Dkt. No. 40-4; Dkt. No. 40-3 (Aliera/Trinity 2019 Member Guide); Dkt. No. 40-8 (Mellom Aliera/Trinity card); Dkt. No. 40-9 (Jackson Aliera/Trinity card), Dkt. No. 40-10 (Aliera/Trinity marketing information).   Aliera/Trinity recruited insurance agents to sell their plans without requiring members to adhere to a specific religious belief and suggested they can offer "a healthcare plan that saves money."  *See* Dkt. No 40-4, pp. 5-14 of 42. According to the OIC, over 80% of the premium payments are used for various fees, commissions, and other payments, leaving less than 20% to pay in covered benefits, or "member sharing." *Id.*, pp. 18 of 35.

It is undisputed that neither Aliera nor Trinity obtained a certificate of authority from the OIC to sell health plans in Washington state.  Dkt. No. 62, p. 13 of 41 Dkt. No. 63, p. 14 of 39.  The health plans defendants sold were ***never*** reviewed, recognized or authorized by any Washington or federal regulator.

---

[4] Trinity asserts that it has a new agreement with the Faith Driven Life Church and New Horizons Church of God, LLC, which Trinity contends meets the requirement of sharing medical expenses continuously among its members since 1997.  *See* Dkt. No. 62, p. 6, ¶15.  This agreement, if it exists, was not in place until *after* the named plaintiffs were members in Aliera/Trinity.  *See* Hamburger Decl., *Exh. C* (Trinity issued announcement of an arrangement with the Faith Driven Life Church dated *January 29, 2020*).  In addition, simply having a business relationship with Faith Driven Life Church and New Horizons Church of God, LLC does nothing to alter *Trinity's* status – *Trinity* does not and cannot meet the statutory requirements for an HCSM because *it* does not meet the statutory definition.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

**D.      The Aliera/Trinity Plans.**

Despite Defendants' claims that the health coverage sold was not insurance, the Aliera/Trinity health plans had all of the attributes of "insurance" under RCW 48.01.040 ("insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies."). Members paid a premium, also called a "member contribution," to Aliera/Trinity. Dkt. No. 40-10, p. 5 of 32 ("Every month, members send their contributions (premiums) to Trinity HealthShare …"); *see also* Dkt. No. 40-3, p. 20 of 56. The premium payment was required for the member to receive health coverage for benefits. *Id.; see also, id.,* p. 43 of 56 ("This membership is issued *in consideration* of the Member's application and the member's payment of a monthly fee as provided under these Plans.") (emphasis added).

In return for the member contributions, the Aliera/Trinity plans would pay money for certain eligible medical expenses, also referred to as "Eligible Needs." *See id.; see also id.,* p. 23 of 56 (definition of "Eligible" medical needs). It provided a list of "Eligible Medical Expenses" including primary care visits, specialty care visits, hospitalization, emergency room, prescription drugs, labs, preventive care, urgent care, hospice, maternity, and x-rays. *Id.,* pp. 25-28 of 56. Aliera/Trinity offered coverage for "unlimited Primary Care visits" and immediate (without a waiting period) "Annual Physicals." *Id.,* p. 16 of 56. They further offered, in return for the premium payments, that "Eligible medical expenses" would be covered according to the member guide. *Id.,* p. 25 of 56. Importantly, Aliera/Trinity represented that if the funds available to pay "eligible needs" were insufficient, claims would still be paid, albeit either on a *pro rata* basis, *id.,* p. 20 of 56, or by increasing premiums sufficiently to meet the uncovered eligible medical expenses. *Id.* In sum, Aliera/Trinity undertook paying for certain future eligible medical expenses in return for members' monthly payments.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Importantly, payments for eligible medical expenses were to be paid directly by Aliera/Trinity to the providers. *Id.*, p. 17 of 56 ("Once the MSRA [deductible] has been reached in full, the sharing will then be ***reimbursed directly*** back ***to the providers and hospital facilities*****.") (emphasis added). Different members did not send payments to each other; rather, Aliera/Trinity paid medical providers directly, just like health insurers do. *Id.* In other words, the Aliera/Trinity member guide undertook to indemnify members, at least in part, for future "eligible medical expenses." *Id.*, p. 25 ("Medical costs are shared on a per person per incident basis for illness or injuries incurring medical expenses after the membership effective date when medially necessary and provided by or under the direction of licensed physicians, osteopaths, urgent care facilities, clinics, emergency rooms, or hospitals (inpatient and outpatient), or other approved providers.").

**E.      The Washington Office of the Insurance Commissioner Issued Cease and Desist Orders Against Aliera and Trinity.**

The OIC received dozens of complaints about Aliera/Trinity. Hamburger Decl., ¶2. It conducted an extensive investigation into Aliera/Trinity. *See generally*, Dkt. No. 40-4. The key question the OIC investigated was whether Trinity met the state and federal definition of an HCSM, and if not, whether it was acting as an unauthorized insurer under Washington law. *Id.*, p. 3 of 42. The OIC concluded that Trinity was ***not*** an HCSM under either law. Specifically, the OIC concluded that Trinity had no evidence that it was a genuine HCSM under Washington or federal law because, in part, neither it nor any predecessor entity had been in existence continuously since December 31, 1999:

> Because [ ] it was formed as a legal entity after 12/31/1999 … Trinity does not meet the definition of an HCSM, according to RCW 48.43.009.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

*Id.*, p. 31 of 42; *see also id.*, pp. 19, 24-26, 34 of 42. The OIC determined that Aliera/Trinity were engaged in the business of insurance. *Id.* It further concluded that neither entity was licensed or authorized to sell or administer insurance in Washington. *Id.*, p. 6 of 42. As a result, Insurance Commissioner Mike Kriedler issued Cease and Desist Orders to both Aliera and Trinity. Dkt. No. 55, ¶¶5, 6; Dkt. No. 40-5, 40-6. In sum, the OIC affirmatively determined that "Trinity does not qualify as a health care sharing ministry ('HCSM') under Washington law and that Trinity is acting as an unauthorized insurer." Dkt. No. 54, p. 2 of 11.

Ultimately, Trinity settled its dispute with the OIC, and agreed to "not contest" the OIC's determination that it acted as an unauthorized insurer. Dkt. No. 54, p. 8 of 11. The Consent Order further required Trinity to "comply fully with applicable laws of the State of Washington." *Id.*, pp. 2, 9 of 11. Because the OIC considers Trinity to be an unauthorized insurer, it also considers "any attempt by Trinity, an unauthorized insurer, to compel binding arbitration with its members" to be both a violation of the Consent Order and established insurance law, including RCW 48.43.200. *Id.*, p. 9 of 11.

### F. Plaintiffs Were Enrolled in the Aliera/Trinity Health Plans That Looked Like Genuine Health Insurance.

It is undisputed that all plaintiffs were enrolled in the Aliera/Trinity health plans. *See* Dkt. No. 62, pp. 2-3, 10 of 41, Dkt. No. 63, pp. 2-3, 11 of 39. There is no dispute that Aliera markets, sells and administers the Trinity health plans in which Plaintiffs were enrolled. Dkt. No. 62, pp. 4 of 41; Dkt. No. 63, p. 4 of 39.

Plaintiff Dean Mellom paid $473.88 per month to Aliera/Trinity as a member of the health plan. Dkt. No. 62. p. 25 of 41; Dkt. No. 63, p. 25 of 39. Plaintiffs Gerald and Roslyn Jackson paid approximately $1,205.77 per month to Aliera/Trinity as members of the health plan. Dkt. No. 62. p. 27 of 41; Dkt. No. 63, p. 27 of 39.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Both Mr. Mellom and the Jacksons received what appeared to be an insurance card stating AlieraCare was a "Health Care Sharing Ministry recognized pursuant to 26 U.S.C. § 5000A(d)(2)(B)," even though neither AlieraCare nor Trinity had ever received any such "recognition." Dkt. No. 55, ¶¶8-9; Dkt. No. 40-8; 40-9. After they enrolled, Plaintiffs received the Aliera/Trinity member guides which purported to explain their rights to benefits. Dkt. No. 55, ¶3; Dkt. No. 40-3.

Plaintiffs were directed to have their providers submit health claims for reimbursement directly to Aliera/Trinity using the "standard industry billing forms (HCFA 1500 and/or UB 92)." *See id.*, p. 28 of 56. Aliera/Trinity issued Explanations of Benefits ("EOBs") to plaintiffs which were indistinguishable from those issued by genuine health insurance. *See* Hamburger Decl., *Exh. D.* Under the heading, "Important Information About Your Appeal Rights," the EOBs even refer the member to seek consumer assistance from the OIC if there are any problems. *Id.*

## III. LAW AND ARGUMENT

**A.      The Aliera/Trinity Plans Sold to Plaintiffs Are "Insurance."**

"Insurance" is "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." RCW 48.01.040. It is broadly defined:

> There is therefore a promise by one person to perform a valuable service on the death of another, a valuable consideration paid for the promise, and a person to whom the benefit of the promise will inure. …[A] contract is to be determined from its nature and effect, not by the terminology used to characterize it. Here there is an 'insurer,' an 'insured,' a 'premium,' and a 'beneficiary,' and we think the contract nothing else than a plain, ordinary insurance contract.

*State ex rel. Fishback v. Globe Casket & Undertaking Co.*, 82 Wn. 124, 128, 143 P. 878, 879 (1914). Thus, the Washington Supreme Court distilled the essential elements of an insurance contract into the following: (1) an insurer; (2) an insured or beneficiary; (3) a

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

premium payment and (4) a loss or injury to be protected against. *See id.; In re Estate of Knight*, 31 Wn.2d 813, 816, 199 P.2d 89, 91 (1948) (Insurance is an agreement, for consideration, by which one person promises to pay money to or for the benefit of another, upon some destruction, death, loss or injury).

Defendants argue that the Aliera/Trinity member booklet and other materials disclaim that any contract exists between the parties, and that, even if a contract does exist, that contract is not a "contract of insurance." *See e.g.* Dkt. No. 61, p. 6. For two independent reasons, these disclaimers do not allow Defendants to avoid liability.

*First*, the Washington Supreme Court has held that an entity does not magically fall outside the definition of insurance simply by saying so in the agreement. "No one can change the nature of insurance business by declaring in the contract that it is not insurance." *McCarty v. King Cty. Med. Serv. Corp.*, 26 Wn.2d 660, 679, 175 P.2d 653, 663 (1946), *citing Allin v. Motorist's All. of Am.*, 29 S.W.2d 19, 23 (1930) (Washington Supreme Court rejected a health care service contractor's claim in its contract that it was merely an "agent" of the hospitals and medical contractors with whom it contracted to provide group health coverage rather than an insurer). "The name that the parties give to the relationship is not determinative." *Id.; see also Rowden v. Am. Evangelical Assoc.*, 2007 Mont. Dist. LEXIS 7, *11 (2007) ("What is said by a putative insurer as to whether it is transacting insurance is irrelevant."). Instead, the Court must consider whether the four essential components are present: An insurer, an insured, consideration and a promise to pay based on a set of contingencies. Where the primary purpose of the business is the "collection of fees or premiums" from members "in consideration" for the provision of "service to members," it "performs the functions of an insurer." *McCarty,* 26 Wn.2d at 680, 684; s*ee also In re Estate of Smiley*, 35 Wn.2d 863, 867, 216 P.2d 212, 214 (1950) (A contract of insurance features "risk-shifting" and "risk distributing" functions).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**Second**, Defendants' various motions to compel arbitration are premised on the existence of a written contract between them and the Plaintiff given that the FAA only applies to a "maritime transaction or *a contract evidencing a transaction involving commerce*." 9 U.S.C. § 2 (emphasis added); *see also* Dkt. No. 61, p. 7 (Defendants stating that the "FAA governs th[eir] motion" to compel arbitration). Defendants take the position, as they must, that they are entitled to compel arbitration precisely because the handbook containing the arbitration provision is "written provision" in a "contract." *Id.*; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238, 1242 (1985). In fact, the Court previously recognized that "the parties agree" that the "AlieraCare benefits booklet ('Member Guide')" is a contract. Dkt. No. 47, p. 4.

As a result, Aliera/Trinity stands in nearly the same shoes as King County Medical Service Corporation in *McCarty*. Where an entity "sells medical protection to working people against the hazard of injury or illness" by collecting "a fixed premium" and "reduc[ing] the respective rights and obligations of all of the interested parties into a written contract [policy]" the coverage is insurance. *McCarty*, 26 Wn.2d at 684. That is exactly what occurred here. Under the analysis established by the Washington Supreme Court, the Plaintiffs are the "insureds" who paid premiums or monthly "contributions" to Aliera/Trinity, the "insurer," with the expectation that future health benefits would be covered under the terms of the member handbook.[5]

---

[5] As insurers, Defendants are held to a high standard. The Washington Legislature has recognized that the business of insurance is critical to the interest of the public:

> The business of insurance is one affected by the public interest requiring that all persons be actuated by good faith, abstain from deception and practice honest and equity in all insurance matters. Upon the insurer, the insured, their providers and their representatives rests the duty of preserving inviolate the integrity of insurance.

RCW 48.01.030. Entities that fall within the definition of insurance must operate according to these high standards. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986) (All entities engaging in the business of insurance have a duty to act in good faith). Insurers' duty of good faith is broad, being both legislatively and judicially imposed. *Am. Mfrs. Mut. Ins. v. Osborn*, 104 Wn. App. 686, 697, 17 P.3d 1229, 1234 (2001).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Defendants' health plans include features that "involve[] both risk-shifting and risk-distributing," the hallmarks of insurance under Washington law. *In re Estate of Smiley*, 35 Wn.2d 863, 867, 216 P.2d 212 (1950). Specifically:

- Defendants' plans are marketed as providing payment benefits for specified health-related contingencies in exchange for a monthly payment, and the benefit amounts are tied to the amount of the monthly premium and cost incurred. *See* Dkt. No. 40-3, p. 4 of 56 ("Your membership card(s) and this booklet provide important information about your Plan, as well as the steps you need to take to access healthcare at one of the thousands of participating network provider locations"). The plans are represented to be "comprehensive healthcare programs provid[ing] services for a full spectrum of medical needs – from wellness, preventive and sick care to help with unforeseen medical emergencies." Dkt. No. 55, ¶10; Dkt. No. 40-10, p. 25 of 32.

- The amount of "contribution" or premium a member pays is dependent on the amount of the "MSRA" or deductible and the amount of benefits the Plan pays. Dkt. No. 40-3, p. 39-43 of 56. In other words, the more risk to Aliera/Trinity of paying substantial claims, the higher the premium payment for the member.

- The Aliera/Trinity Member Handbook is full of language reflecting health plan *coverage*. *See e.g.,* Dkt. No. 40-3, p. 6 of 56 ("Aliera Healthcare services in conjunction with Trinity Healthshare cost-sharing creates a full range of services and offerings, each part summarized below"); *id.* ("As part of our solutions, **the plans cover medical services** recommended by the USPSTF and outlined in the ACA for preventive care") (emphasis added); *id.,* p. 16 of 56 ("AlieraCare Bronze, Silver and Gold plans have unlimited Primary Care visits").

- The healthcare plans charge "members" a "monthly contribution" specifically referred to as "premiums." *See* Dkt. No. 40-3, p. 20 of 56 (describing the requirements for "financial participation"); Dkt. No. 40-10, p. 5 of 32 ("Every month, members send their contributions (**premiums**) to Trinity HealthShare …"); *id.* p. 16 of 32 (emphasis added).

- The plans require a member to pay a deductible, called a "Member Shared Responsibility Amount" ("MSRA") amount. *See* Dkt. No. 40-3, p. 23 of 56; Dkt. No. 40-10, p. 5 of 32 (MSRA is "[s]imilar to a deductible").

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

- After the MSRA is paid, medical bills are paid in accordance with a benefits booklet or member guide for the selected program. *See e.g.*, Dkt. No. 40-3, p. 6 of 56; Dkt. No. 40-10, p. 22 of 32 ("It's an all-inclusive, affordable healthcare option.").

- The plans require pre-authorization of certain non-emergency surgeries, procedures, or tests, as well as for certain types of cancer treatments. *See* Dkt. No. 40-3, p. 17 of 56 ("Members are required to pre-authorize all hospitalization services and visits unless it is an obvious medical emergency"), p. 32 of 56 (describing the procedures or services that must be pre-authorized).

- The plans purport to provide coverage for medical expenses, including for primary care visits, specialty care visits, hospitalization, emergency room, prescription drugs, labs, preventive care, urgent care, hospice, maternity, and x-rays. Dkt, No. 40-3, pp. 25-28 of 56.

- Claims for payments are submitted by providers on the standard insurance billing forms, HCFA1500 or UB 92. *Id.*, p. 26 of 56.

- Payments for covered eligible medical expenses are made by Defendants directly to providers. *Id.*, pp. 16-17 of 56; Dkt. No. 40-10, p. 17 of 32. Such payments are, of course, a form of risk-sharing and risk-distributing.

These features render the Aliera/Trinity plans indistinguishable from genuine health insurance. Indeed, that similarity was the very foundation for all of Aliera/Trinity's marketing. Dkt. No. 40-10, p. 3 of 32.

Other courts have held that entities claiming to be health care sharing ministries with functionally identical programs constitute "contracts of insurance." *See, e.g., Commonwealth v. Reinhold*, 325 S.W.3d 272, 273 (Ky. 2010); *Rowden,* 2007 Mont. Dist. LEXIS 7, *11 (2007); *see also, Scott v. Louisville Bedding Co.*, 404 S.W.3d 870, 877 (Ky. Ct. App. 2013).

In *Reinhold*, the entity argued that it did not "shift the risk of incurring medical charges from its members to itself." *Reinhold,* 325 S.W. 3d at 275. The Kentucky Supreme Court rejected this claim:

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

> [T]he Medi-Share program fits comfortably within the statutory definition of an insurance contract.
>
> * * *
>
> The "commitment" contract, as previously quoted, obligates Medi-Share members to pay their monthly "share" by the first of each month because their "fellow believers in Christ" *rely* upon that payment to satisfy their medical needs. In return for paying their monthly "share," Medi-Share members remain eligible to receive payment for their medical needs through the program. ***This process clearly shifts the risk of payment for medical expenses from the individual member to the pool of sub-accounts from which his expenses will be paid. Thus, regardless of how Medi-Share defines itself or what disclaimers it includes in its literature, in the final analysis, there is a shifting of risk.***

*Id.* at 276-77 (emphasis in the original and added).

Defendants may argue that notwithstanding their conveying the unmistakable impression that what they are selling is insurance, it really is not insurance because Defendants have really made no promise to pay their members anything. *See, e.g.*, Dkt. No. 61, p. 4. That is an odd defense--Defendants seem to be admitting to deception. But in any event, notwithstanding any of Defendants' disclaimers their contracts involve risk-shifting, just as was the case with Medi-Share in the *Reinhold* case. As the Kentucky Supreme Court explained:

> Medi-Share argues, however, that the disclaimer in the "commitment" contract which states that Medi-Share takes no responsibility for the payment of the members' medical bills indicates that no risk shifting occurs. Nevertheless, this disclaimer, while perhaps shielding Medi-Share from any liability for its members' medical bills, does not overcome the fact that through the Medi-Share program *the individual members pool resources together to distribute the risk of major medical bills amongst each other*. As previously stated, one cannot change the nature of an insurance business by simply declaring in the contract that it is not insurance.

*Reinhold*, 325 S.W. 3d at 278.

Moreover, the plain language of the Aliera/Trinity member guide contains unambiguous promises of payment for healthcare services:

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 14
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

- "Telemedicine consultations are free for you and dependents on your plan." Dkt. No. 40-3, p. 11 of 56.

- "Members have no out-of-pocket expenses for preventive services." *Id.*, p. 13 of 56.

- "Aliera and Trinity Members have access to lab work in the convenience of their in-network provider's office or at any lab location nationwide." *Id.*

- "AlieraCare Bronze, Silver, and Gold plans have unlimited Urgent Care visits." *Id.*, p.14 of 56.

- "AlieraCare Bronze, Silver and Gold plans have unlimited Primary Care visits." *Id.*, p. 16 of 56.

- "Annual Physicals are available immediately." *Id.*

- For hospitalization, "[o]nce the MSRA [deductible] has been reached in full, the sharing will then be reimbursed directly back to the providers and hospital facilities." *Id.*, p. 17 of 56.

For other services, Aliera/Trinity represent that "Eligible needs" submitted will be paid so long as there are enough "sharing" funds. *Id.*, p. 20 of 56. If the amount submitted and determined "eligible" exceeds the sharing funds, Aliera/Trinity state that a "pro-rata sharing of eligible needs may be initiated" and then the monthly contribution may be increased. *Id.* The Aliera/Trinity member guide reflects Defendants' intent to pay benefits according to the terms of the plan. *Id.*, p. 5 of 56 ("Medical needs are only shared by the members according to the membership guidelines."); *id.*, p. 24 of 56 ("By submitting monthly contributions, the contributors instruct Trinity HealthShare to share clearing house funds in accordance with the membership instructions."). All control of the payment of benefits rests exclusively with Aliera/Trinity, who are given the "final authority" over payment decisions. *Id.* The contract between the parties is an agreement to pay or indemnify based upon "determinable contingencies." RCW 48.01.040. As a matter of law, the Aliera/Trinity health plans are "insurance."

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**B.    "Authorized Health Care Sharing Ministry Plans" are a Special Exception to Insurance that Do Not Apply to Defendants.**

Until 2011, there was no exception to Washington's definition of "insurance" for HCSMs. That year, the Washington legislature passed SHB 5122, modifying Washington insurance law to meet certain requirements under the newly enacted Affordable Care Act. *See* Hamburger Decl., *Exh. E*, S.SL. 5122 (2011); *Exh. F* (Final Bill Report on ESSB 5122). No discussion of health care sharing ministries was included in the original legislation. Instead, an amendment excluding entities that meet the federal definition of "health care sharing ministries" from the Washington definition of "insurer" or "health carrier" was added by the Washington House of Representatives in order to "harmonize" state and federal law. *See id.*, *Exh. G*, HBR on 5122, pp. 8-9. An exception was required because, absent such a statutory carve-out, the legislature recognized that HCSMs would otherwise fall within the definition of insurance under the law. This view was consistent with the actions of the regulator. Before the Washington legislature enacted SB 5122, the OIC considered HCSMs to be in the "business of insurance." *See e.g.*, Hamburger Decl., *Exh. H* (Cease and Desist Order for unauthorized insurance issued to a different purported HCSM before SB 5122 was enacted). Thus, if the Aliera/Trinity plans do not meet the narrow requirements for HCSMs under state and federal law, which would except them from the broad definition of "insurance," the plans are insurance.

A valid HCSM under both Washington state and federal law must meet specific and rigorous requirements to ensure that only legitimate existing entities with a history of administering these shared plans to those of a common religious faith qualify as an HCSM. Those requirements limit the exception to an entity that meets all five prongs of the following criteria:

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 16
[Case No. 2:19-cv-01281-BJR]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303  Fax (206) 223-0246

1.     [It] is a tax exempt § 501(c)(3) organization;

2.     whose members "share a common set of ethical or religious beliefs and share medical expenses among members in accordance with those beliefs;"

3.     whose members "retain membership even after they develop a medical condition;"

4.     "which (or a predecessor of which) has been in existence at all times since December 31, 1999, and medical expenses of its members have been shared continuously and without interruption since at least December 31, 1999; and

5.     which conducts an annual audit.

26 U.S.C. § 5000A(d)(2)(B)(ii)(I)-(V) (emphasis added). The 1999 cutoff date in the fourth prong serves two important legislative purposes: (1) it ensures reliability of care that comes with historical practice, and (2) it prevents "opening the flood gate" to groups seeking to circumvent the requirements of the ACA. *Liberty Univ. v. Lew*, 733 F.3d 72, 102 (4th Cir. 2013).

If an entity is an HCSM under 26 U.S.C. § 5000A, then it also meets the definition of an HCSM under RCW 48.43.009, and is not required to obtain a certificate of authority issued by the Washington insurance commissioner. ***All other entities that sell products meeting the definition of insurance must obtain a certificate of authorization.*** RCW 48.05.030. It is undisputed that neither Aliera nor Trinity obtained such certificate of authorization from the Insurance Commissioner. Dkt. No. 54, *Exh. A*, p. 4.

Plaintiffs dispute Trinity's qualification under multiple requirements of 26 U.S.C. § 5000A(d)(2)(B)(ii). But, given that the requirements are conjunctive, they only need to establish that Trinity fails to meet one of the five requirements. Here, it is undisputed that Trinity was not in existence until long after 1999 because it was created on June 27, 2018. *See* Dkt. No. 22-1, *Exh. 1*, Form 1023 with attachments, p. 15 of 77, Part I, Question 11: "Date incorporated if a corporation or formed if other than a corporation

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 17
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

… [Answer:] 06/28/2018").  It is also undisputed that it had no "predecessor."  *See id.*, p. 19 of 77, Part VII, Question 1" "Are you a successor to another organization? ☐Yes [checked box] No") *Id.*, Certificate of Incorporation dated June 27, 2018, pp. 36-37 of 77; Dkt. No. 54, *Exh. A*, p. 2 (same).  Defendants each admit this fact in their respective Answers.  Dkt. No. 62, ¶6, Dkt. No. 63, ¶6.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (admission in answer is a binding judicial admission).

Given the date of its creation, Trinity cannot be an HCSM under either federal or state law. This is precisely what the Washington Insurance Commissioner determined. *See* Dkt. No. 57-3, p. 1; 57-4, p. 1.  As a matter of law, Trinity is not an HCSM that is exempt from the definition of "insurance" under Washington law.

**C.    The Court Should Defer to the Finding by the Washington Insurance Commissioner that Aliera/Trinity Plans are "Insurance."**

The Washington Insurance Commissioner, along with many other state insurance regulators, has determined that the Aliera/Trinity contract is "insurance" and does not meet the narrow statutory requirements to be exempt from insurance regulation under RCW 48.43.009 and 26 U.S.C. § 5000A.  *See* Dkt. No. 54, ¶¶5-7; Dkt. No. 55, ¶¶4-6, 11-15, 21-22; Dkt. Nos. 40-4-40-6, 40-11-40-13, 40-14-40-15, 40-20-40-21.   Commissioner Kriedler's determination is to be afforded substantial deference by courts, particularly in light of the agency's "specialized expertise," so long as it is not contrary to statute. *Chi. Title Ins. Co. v. Office of Ins. Comm'r*, 178 Wn.2d 120, 133, 309 P.3d 372, 378 (2013); *Port of Seattle v. Pollution Control*, 151 Wn.2d 568, 612, 90 P.3d 659, 682 (2004).

Such deference is well-placed.  The OIC's analysis of Aliera/Trinity's health plan is strongly supported by a lengthy and thorough investigation.  *See* Dkt. No. 40-4.  It is based upon the OIC's recognized expertise at enforcement of insurance regulations. *Glaubach v. Regence Blueshield,* 149 Wn.2d 827, 834, 74 P.3d 115 (2003)( "[G]reat weight [is given] to the interpretation of statutes laid down by the executive agency charged with

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 18
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246

enforcement."). Consistent with the plain language of both RCW 48.43.009 and 26 U.S.C. § 5000A, the OIC determined that (a) Aliera/Trinity engaged in the business of "insurance" as defined by state law; and (b) Aliera/Trinity did not meet the state and federal statutory definition of an HCSM that would exempt them from insurance regulation.

The OIC's determination that Aliera/Trinity health plans are "insurance" is entirely consistent with the OIC's past and ongoing regulatory actions. *See, e.g.,* Hamburger Decl., *Exh. H* (Cease and Desist Order for unauthorized insurance issued to a different purported HCSM before SB 5122 was enacted). The OIC has also found other entities to have engaged in unauthorized health insurance, when they attempt to exploit the HCSM federal loophole improperly. *See id., Exhs. I, J.* (The OIC recently issued cease and desist orders to at least two other entities for selling unauthorized insurance as HCSMs without meeting the Washington state and federal requirements).

### IV. CONCLUSION

The Court should conclude, consistent with the findings and order of the OIC, that Aliera and Trinity marketed, sold and administered "insurance" in Washington state, and that the plans they sold to Washington residents were not excluded from the definition of "insurance" as HCSMs, pursuant to RCW 48.43.009 and 26 U.S.C. § 5000A.

DATED: September 3, 2020.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

_/s/ Eleanor Hamburger_
Richard E. Spoonemore (WSBA #21833)
Eleanor Hamburger (WSBA # 26478)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: rspoonemore@sylaw.com
Email: ehamburger@sylaw.com

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 19
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

MYERS & COMPANY, PLLC
Michael David Myers (WSBA #22486)
Samantha Lin (WSBA #50782)
1530 Eastlake Avenue East
Seattle, WA 98102
Tel. (206) 398-1188; Fax (206) 400-1115
Email:  mmyers@myers-company.com
Email:  slin@myers-company.com

MEHRI & SKALET, PLLC
Jay Angoff, *Pro Hac Vice*
Cyrus Mehri, *Pro Hac Vice*
1250 Connecticut Avenue, NW, Suite 300
Washington, DC  20036
Tel. (202) 822-5100
Email:  jangoff@findjustice.com
Email:  cmehri@findjustice.com

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 20
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303  FAX (206) 223-0246

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Jay Angoff**
  jangoff@findjustice.com
- **Ronan Patrick Doherty**
  doherty@bmelaw.com, christensen@bmelaw.com
- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, stacy@sylaw.com, theresa@sylaw.com
- **Curt Roy Hineline**
  chineline@bakerlaw.com, jhickman@bakerlaw.com
- **Richard L. Jolly**
  rjolly@susmangodfrey.com, eball@susmangodfrey.com
- **Samantha Lin**
  slin@myers-company.com
- **Cyrus Mehri**
  cmehri@findjustice.com, pleadings@findjustice.com
- **James Raymond Morrison**
  jmorrison@bakerlaw.com, jhickman@bakerlaw.com
- **Michael David Myers**
  mmyers@myers-company.com, slin@myers-company.com, tpak@myers-company.com
- **Robert H. Rutherford**
  robert.rutherford@burr.com
- **Edgar Guy Sargent**
  esargent@susmangodfrey.com, ecf-4811d219bf44@ecf.pacerpro.com, paris-jimenez-2434@ecf.pacerpro.com, pjimenez@susmangodfrey.com, ecf-226e044d1c76@ecf.pacerpro.com
- **Elizabeth B. Shirley**
  bshirley@burr.com
- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, stacy@sylaw.com, theresa@sylaw.com
- **Genevieve Vose Wallace**
  gwallace@susmangodfrey.com, jgrounds@susmangodfrey.com, genevieve-wallace-4415@ecf.pacerpro.com, ecf-009165bc539e@ecf.pacerpro.com

DATED:  September 3, 2020, at Seattle, Washington.

_____/s/ Eleanor Hamburger_____
Eleanor Hamburger (WSBA # 26478)
Email:  ehamburger@sylaw.com

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT RE: INSURANCE – 21
[Case No. 2:19-cv-01281-BJR]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303  FAX (206) 223-0246